25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Raphael PERAZA (93-1660), Rafael Morcate (93-1733),
Defendants-Appellants.
 Nos. 93-1660, 93-1733.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1994.
 
 Before: GUY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants, Raphael Peraza and Rafael Morcate, were found guilty of having committed drug and firearm offenses. Both men have appealed. Mr. Peraza, who is Hispanic, argues that his conviction should be reversed because the prosecution exercised a peremptory challenge to excuse a black venireman on the basis of his race and sex. Mr. Peraza also argues that the sentence he received constituted cruel and unusual punishment in violation of the Eighth Amendment, and that the sentence violated the due process and equal protection guarantees of the Fifth Amendment as well. Mr. Morcate argues that his conviction should be reversed because the court admitted certain drugs as evidence against him without requiring the prosecution to show an unbroken chain of custody. Finding the defendants' arguments unpersuasive, we shall affirm both the convictions and the challenged sentence.
 
 
 2
 * In September of 1991 a confidential informant introduced defendant Rafael Morcate to undercover Agent Joseph Secrete of the Michigan Bureau of Alcohol, Tobacco and Firearms. Mr. Morcate offered to sell Agent Secrete a sawed-off shotgun. Agent Secrete agreed, and the deal was set to be consummated on September 5. On that day Mr. Morcate and a companion arrived at a predetermined location in the Detroit area and sold the agent a Remington .12 gauge sawed-off shotgun for $224.
 
 
 3
 Several months later Mr. Morcate contacted Agent Secrete and offered to sell him crack cocaine. On December 24 and December 30 of that year Agent Secrete purchased 3.55 grams and 3.31 grams, respectively, of cocaine base from Mr. Morcate.
 
 
 4
 Another drug deal was arranged for January 2, 1992. When that day arrived, the agent and Mr. Morcate went to an apartment where they were admitted by defendant Raphael Peraza. Morcate and Peraza had a brief conversation in Spanish, after which Mr. Peraza left the apartment. He returned several minutes later with a quantity of crack cocaine. The agent paid Mr. Morcate the agreed-upon price for the crack, and Morcate turned the money over to Peraza. Agent Secrete made a second purchase at the apartment on January 7, this time from Peraza and a female companion.
 
 
 5
 Messrs. Morcate and Peraza were arrested pursuant to a criminal complaint filed on June 24, 1992. A federal grand jury subsequently handed up a seven-count indictment against them. The indictment charged Mr. Morcate with possession of an unregistered firearm, a violation of 26 U.S.C. Sec. 5861(d) (count one); being a felon in possession of a firearm, a violation of 18 U.S.C. Sec. 922(g)(1) (count two); and distributing crack cocaine on December 24 and 30, 1991, a violation of 21 U.S.C. Sec. 841(a)(1) (counts four and five). The indictment further charged both Morcate and Peraza with conspiracy to distribute cocaine base, a violation of 21 U.S.C. Sec. 846, and with distribution of cocaine base on January 2, 1992 (counts three and six). Mr. Peraza was also charged with distribution of cocaine base on January 7, 1992 (count seven).
 
 
 6
 After a three-day trial, the jury returned a verdict of guilty on all counts. The district court later sentenced Mr. Peraza to a term of imprisonment for 87 months. Mr. Morcate received a statutorily-mandated sentence of 120 months on the gun charges and a consecutive sentence of 137 months on the drug charges. Both defendants filed timely notices of appeal.
 
 II
 Raphael Peraza
 
 7
 Mr. Peraza contends that the government impermissibly exercised a peremptory challenge against Byron Furlough, a black man. Altogether, the prosecution exercised peremptory challenges against three black people. Citing Batson v. Kentucky, 476 U.S. 79 (1986), counsel for defendant Morcate made timely objections to the first two such challenges. Neither defendant made a timely objection to the exclusion of the third black, Mr. Furlough.
 
 
 8
 The district court held a side-bar conference to ascertain the prosecution's reason for the first two questioned challenges. The court told the parties at that time that further Batson-based objections could not be held back and would have to be raised when the peremptory challenge was exercised. Despite this warning, neither defendant spoke up about the strike of Mr. Furlough. The voir dire came to an end on October 26, at which time the venire was dismissed and the jury empaneled.
 
 
 9
 On the following day, October 27, counsel for defendant Morcate objected to the exclusion of Mr. Furlough and asked that the government be required to explain its reasons for the strike. The district court overruled the objection as untimely, noting that the jury had already been empaneled. Counsel for defendant Peraza did not join in the objection until after the court had overruled it.
 
 
 10
 Although not asked by the district court to explain her reasons for excluding Mr. Furlough, the prosecutor volunteered that she had excused him because (a) he wore an emblem associated with Malcolm X, (b) he was a young, unmarried male, and (c) he was "unresponsive" on voir dire and "looked at [his] feet the entire time, when the court was addressing the jury." Mr. Peraza now argues that several of the prosecutor's stated reasons are unacceptable. Malcolm X is so widely revered among African-Americans, he contends, that exclusion of a juror for associating himself with Malcolm X is tantamount to exclusion on the basis of race. Mr. Peraza further argues that the exclusion of Mr. Furlough as a young, unmarried male was improper. In this connection he cites J.E.B. v. Alabama, 128 L.Ed.2d 89 (1994), a decision handed down subsequent to the trial of the case at bar. In J.E.B. the Supreme Court held that sex-based peremptory strikes, like race-based strikes, are prohibited by the Equal Protection Clause of the Fourteenth Amendment.
 
 
 11
 Because defendant Peraza's counsel did not voice a timely objection to the exclusion of Mr. Furlough, waiting instead until the jury had been seated and the venire discharged, we conclude that Mr. Peraza waived his right to question the propriety of the peremptory challenge. See United States v. Cashwell, 950 F.2d 699, 704 (11th Cir.1992); Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir.1991), cert. denied, 112 S.Ct. 1294 (1992); United States v. Romero-Reyna, 867 F.2d 834, 836-37 (5th Cir.1989). The district court warned the defendants that Batson objections must be raised immediately, and if the warning had been heeded, any perceived problem with the subsequent peremptory challenge could have been dealt with before the venire was discharged.
 
 
 12
 Under the circumstances of this case, the waiver was not cured when the prosecutor volunteered her reasons for exercising the peremptory challenge. Even if the waiver had been excused, however, defendant Peraza would not be entitled to a reversal.
 
 
 13
 We see nothing wrong with excusing jurors who choose to identify themselves with Malcolm X or any other controversial figure. The prosecutor's stated policy of excluding all such jurors is race-neutral. Cf. United States v. Payne, 962 F.2d 1228 (6th Cir.), cert. denied, 113 S.Ct. 306 (1992), in which this court held that a strike of two jurors because of association with black activist groups was permissible.
 
 
 14
 In light of the Supreme Court's decision in J.E.B., it is now clear that the prosecutor was not entitled to excuse Mr. Furlough on the basis of his sex. In this case, however, the prosecutor had a "mixed motive" for her challenge; some of the considerations that prompted her to exercise the challenge were clearly permissible, while one was not. Age, marital status, and lack of responsiveness are still legitimate grounds for a peremptory challenge, as is identification with a notorious public figure. We take it from the prosecutor's statement that any of these neutral reasons, standing alone, would have caused her to exclude Mr. Furlough. Even if J.E.B. should be given retroactive effect, therefore--a question on which we express no opinion--and even if the defendant had not waived his objection, the dismissal of Mr. Furlough would not have required us to order a new trial. See Howard v. Senkowski, 986 F.2d 24 (2d Cir.1993).
 
 
 15
 Defendant Peraza also challenges his sentence on constitutional grounds. He argues that an 87-month sentence constitutes cruel and unusual punishment, and that the 1:100 crack-to-cocaine ratio set forth in the sentencing guidelines discriminates against African-American defendants and thus violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as incorporated by the Fifth Amendment. Mr. Peraza did not raise these issues in the district court, however, and he is precluded from doing so for the first time on appeal. United States v. French, 974 F.2d 687, 697 (6th Cir.1992), cert. denied, 113 S.Ct. 1012 (1993); United States v. Nagi, 947 F.2d 211, 213-14 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992). Had there been no waiver, we should have rejected the arguments on the authority of United States v. Reece, 994 F.2d 277, 278-79 (6th Cir.1993); United States v. Tinker, 985 F.2d 241, 242 (6th Cir.1992), cert. denied, 113 S.Ct. 1872 (1993); United States v. Williams, 962 F.2d 1218, 1227-28 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992); and United States v. Pickett, 941 F.2d 411, 418-19 (6th Cir.1991).
 
 
 16
 Defendant Peraza also maintains that pursuant to U.S.S.G. Sec. 5K.0 the district court ought to have granted him a downward departure from the sentencing range prescribed by the guidelines, the Sentencing Commission having failed to take into account the disparate impact that a 1:100 crack-to-cocaine ratio has on African Americans. Because the district court was never asked to grant such a departure, this issue has also been waived. A district court's refusal to depart downward from a correctly calculated guideline sentence is not appealable, moreover, see United States v. Morgan, 986 F.2d 151, 152 (6th Cir.1993), and an identical argument was rejected by this court in Pickett, 941 F.2d at 417-18.
 
 Rafael Morcate
 
 17
 Defendant Morcate's only contention on appeal is that the district court committed reversible error in admitting as trial exhibits samples of the cocaine he sold to Agent Secrete. Mr. Morcate's counsel objected to the admission of these exhibits on the ground that the government had not shown an unbroken chain of custody of the samples from the time of purchase to the time of trial.
 
 
 18
 Agent Secrete testified that he took the cocaine base directly to the ATF evidence vault in bags that he had signed for identification purposes. The samples were taken to a laboratory for analysis at some point prior to the trial, and then were returned to the evidence vault. There was no testimony from Agent Campbell, the officer who supposedly took the samples to the lab, and there was no testimony as to whether the police followed procedures designed to preserve the integrity and security of the exhibits.
 
 
 19
 Agent Secrete testified that, except for markings left by the police lab, the crack cocaine was in the same condition as it was when he purchased it from the defendant. A laboratory technician, Bradley Choete, testified as to the procedures he followed in testing the substances and in returning the exhibits to Agent Secrete at the ATF. The district court considered this testimony adequate, and overruled Mr. Morcate's objections.
 
 
 20
 Physical evidence may be admitted when there has been a showing that the exhibit offered is in substantially the same condition as it was when the crime was committed; the prosecution need not prove a perfect chain of custody. United States v. Lott, 854 F.2d 244, 250 (7th Cir.1988). "Absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of the evidence, not its admissibility." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). The admission of the exhibits in question here was not a clear abuse of discretion.
 
 
 21
 AFFIRMED.