RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TERRANCÉ AKINS,

        *Petitioner-Appellant,*

       *v.*

JOE EASTERLING,

        *Respondent-Appellee.*

> No. 08-6161

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00971—Todd J. Campbell, Chief District Judge.

Argued: December 7, 2010

Decided and Filed: August 5, 2011

Before: MOORE and STRANCH, Circuit Judges; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christopher S. Perry, JONES DAY, Washington, D.C., for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Christopher S. Perry, Michael S. Fried, JONES DAY, Washington, D.C., for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant Terrancé Akins was convicted in Tennessee state court of one count of especially aggravated robbery, and the Tennessee appellate courts upheld his conviction. He now appeals the district

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

court's denial of his petition for a writ of habeas corpus. We certified two issues for appeal: whether the state trial court erred in (1) permitting the prosecution to exercise a peremptory challenge to excuse an African American prospective juror, and (2) permitting Akins to represent himself at trial. Because we cannot conclude that the Tennessee Court of Criminal Appeals was unreasonable in its adjudication of Akins's claims, we **AFFIRM**.

## I. BACKGROUND & PROCEDURE

In 1998, a jury in Williamson County, Tennessee, convicted Akins of one count of especially aggravated robbery, TENN. CODE ANN. § 39-13-403, for his role in a carjacking at the Cool Springs Mall in Franklin, Tennessee. Akins, seventeen years old at the time of the crime, was charged in a juvenile petition but ultimately tried as an adult. Akins was appointed counsel but moved to represent himself at trial. The trial court granted Akins's request to represent himself and permitted appointed counsel to serve as elbow counsel. At sentencing, the trial court found that Akins was a violent offender and sentenced him to twenty years of imprisonment. The jury also assessed a $50,000 fine, which the trial judge reduced to $1000.

The Tennessee Court of Criminal Appeals affirmed the conviction on direct appeal, *State v. Groomes*, No. M1998-00122-CCA-R3-CD, 2000 WL 1133542 (Tenn. Crim. App. Aug. 10, 2000) (unpublished decision), and the Tennessee Supreme Court denied Akins's application for permission to appeal, *State v. Akins*, No. M1998-00122-SC-R11-CD (Tenn. Mar. 4, 2002). Akins filed a petition for post-conviction relief, which the state court denied. *Akins v. State*, No. 203-079 (Williamson Cnty. Cir. Ct. Aug. 19, 2005). The Tennessee Court of Criminal Appeals affirmed the judgment, *Akins v. State*, No. M2005-02215-CCA-R3-PC, 2007 WL 189461 (Tenn. Crim. App. Jan. 22, 2007) (unpublished decision), and the Tennessee Supreme Court denied Akins's application for permission to appeal, *Akins v. State*, No. M2005-02215-SC-R11-PC (Tenn. May 14, 2007).

Akins filed a pro se petition for a writ of habeas corpus on September 6, 2007, raising four grounds for relief. The state moved to dismiss Akins's petition on the merits. On August 12, 2008, the district court granted the state's motion to dismiss and denied the petition. The district court also declined to certify any of the four grounds for appeal. Akins filed a timely notice of appeal. We granted Akins's application for a certificate of appealability on the two issues now before us and appointed counsel for Akins.

## II.  ANALYSIS

### A.  Standard of Review

"We review the district court's legal conclusions in habeas proceedings de novo and its findings of fact for clear error." *Braxton v. Gansheimer*, 561 F.3d 453, 457 (6th Cir. 2009). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Akins's petition because he filed it after the effective date of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997). Under AEDPA, we may grant a writ with respect to a claim adjudicated on the merits in state-court proceedings only if the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

With respect to § 2254(d)(1), "[a] state court's decision would be considered 'contrary to' established law if it is 'diametrically different' from or 'opposite in character or nature' to federal law as determined by the Supreme Court." *Pudelski v. Wilson*, 576 F.3d 595, 607 (6th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)), *cert. denied*, 130 S. Ct. 3274 (2010). "[I]f the state court identifies the correct governing legal principle from the Supreme Court's decisions," habeas relief is available under the "unreasonable application" clause if the state court "unreasonably applies that principle to the facts of the prisoner's case," or "unreasonably extends or

unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Braxton*, 561 F.3d at 458 (alteration omitted) (internal quotation marks omitted); *see also Williams*, 529 U.S. at 407–09. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.'" *Pudelski*, 576 F.3d at 607 (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

With respect to § 2254(d)(2), "'a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Braxton*, 561 F.3d at 458 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). The state court's factual determinations are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *accord Braxton*, 561 F.3d at 458.

## B. *Batson* Claim

Akins's first asserted ground for relief is that the state trial court erred, under *Batson v. Kentucky*, 476 U.S. 79 (1986), in allowing the prosecutor to exclude an African American juror with a peremptory strike. The jury venire had two African American jurors, one of whom was excused for cause. The prosecutor sought to exercise a peremptory challenge on the remaining African American juror, "Juror D," and Akins objected to the strike. In a conference outside the presence of the jury, the prosecutor stated that he wanted to strike Juror D because

> (1) she indicated on the juror questionnaire that she had a relative who was charged with a crime or had been the subject of a criminal investigation; (2) she indicated that she considers herself to be politically slightly liberal; and (3) she indicated that, if she was a lawyer in this case, she would want to know how a juror felt about blacks and crime, their thoughts about blacks, and whether they had ever been robbed by a black person.

*Groomes*, 2000 WL 1133542, at *10; *see also* R.36, Addendum ("Add.") 3 (DVD 3 at 2:05:54–2:08:05).[1] In particular, the prosecutor indicated that Juror D was the only juror to indicate on her questionnaire that she had a close friend or family member convicted of a crime. In response, Akins argued that the reasons given were not "good enough reasons to exclude her from the jury," especially because another juror had responded affirmatively when Akins had asked the jury if anyone had a family member who had been the victim of a crime. R.36, Add. 3 (DVD 3 at 1:54:10–1:54:40 (question to jury), 2:10:40–2:11:59 (conference)). During the course of the discussion, the trial judge remarked to the prosecutor, "To be perfectly honest, this is not the only case where you've excused the only black juror. It's more often that you do that than not." *Id.* at 2:13:35–2:13:44. The trial judge also rejected the prosecutor's second proffered reason—that Juror D identified herself as politically slightly liberal—as insufficient to strike her in this case. The trial judge conducted an individual voir dire with Juror D, in which she stated that her half-brother was convicted of selling drugs and that she believed that "race has a bearing on the outcome of a trial, in that a white juror may convict a defendant just because he is black." *Groomes*, 2000 WL 1133542, at *12; *see also* R.36, Add. 3 (DVD 3 at 2:45:20–2:47:55). After Akins renewed his objection, the trial judge determined that Juror D's relationship to her half-brother was sufficient to excuse her. The trial judge permitted the strike, reasoning that the court had always permitted a party to excuse a juror whose close relative was convicted of a crime or had been the victim of a crime. The trial judge also overruled Akins's motion for a mistrial on the ground that there were no African American jurors.

Analysis of a claim of discrimination in the prosecutor's exercise of peremptory challenges in juror selection follows the three-part framework established in *Batson*: (1) the defendant must make a prima facie showing of discrimination; (2) the burden then shifts to the prosecution to provide a race-neutral explanation for the challenge; and (3) the defendant then has the opportunity to rebut the proffered race-neutral reason as

---

[1]The state-court record was filed manually in the district court, organized in twenty-four addendums, including DVD recordings of the trial in lieu of written transcripts. *See* R.34 (Mot. to Manual File Docs.); R.36 (Notice of Manual Filing).

pretext, and the trial court determines whether the defendant has established purposeful discrimination. 476 U.S. at 93–98; *accord Braxton*, 561 F.3d at 458–59. The defendant "always bears the ultimate burden of persuasion." *Braxton*, 561 F.3d at 459.

The relevant state-court decision is the Tennessee Court of Criminal Appeals' decision on direct review because it is the last state-court decision to adjudicate Akins's *Batson* claim on the merits. *See Pudelski*, 576 F.3d at 607. After reviewing the three-step framework required by *Batson*, the state court discussed the discretionary nature of peremptory strikes and stated that "the attorney's judgment is acceptable unless motivated solely by race." *Groomes*, 2000 WL 1133542, at *11. The state court concluded that "[s]ince the prosecution articulated race-neutral reasons for striking [Juror D], the burden of proof shifted back to [Akins] to show purposeful discrimination," but that Akins failed to "carr[y] that burden." *Id.* at *12. On review, Akins's "*Batson* claim presents a mixed question of law and fact." *Braxton*, 561 F.3d at 458. The district court concluded that "the facts before the Court of Criminal Appeals supported its determination that the prosecution had demonstrated a racially-neutral reason for challenging [Juror D], and that Akins had failed to establish that the reason was a pretext for discrimination." R.38 (Mem. at 8).

### 1. Contrary to, or Unreasonable Application of, Clearly Established Federal Law

Akins asserts errors of law under both the second and third steps of *Batson*'s framework. Akins first argues that the prosecutor's third proffered reason for striking Juror D was not race neutral and that the state court's determination that the prosecutor met his burden of producing a legally sufficient race-neutral explanation under step two of *Batson* is contrary to clearly established Supreme Court law because the impermissible race-based reason "taints" the other race-neutral reasons. Alternatively, he argues that the legal standard applied by the state court to determine discriminatory intent at step three—requiring that the prosecution's decision to strike a juror be motivated solely by race—is contrary to clearly established Supreme Court law. The state responds that the prosecutor's third reason was not impermissibly race based and

that the Supreme Court has not required the legal standard that Akins asserts is constitutionally required.

### a.   *Batson* Step Two:   Whether the Prosecutor's Explanation Was Race Neutral

Akins argues that the prosecutor's third proffered reason was not race neutral and that the impermissible race-based reason "taints" the other race-neutral reasons.  The prosecutor stated that the third reason he wanted to strike Juror D is because "she indicated that, if she was a lawyer in this case, she would want to know how a juror felt about blacks and crime, their thoughts about blacks, and whether they had ever been robbed by a black person." *Groomes*, 2000 WL 1133542, at \*10; *see also* R.36, Add. 3 (DVD 3 at 2:05:54–2:08:05, 2:45:20–2:47:55).  The state court did not explain its analysis of step two of *Batson* and referenced the prosecutor's third proffered reason only when recounting that the trial court "asked [Juror D] about her answers related to race" during the individual voir dire.  *Groomes*, 2000 WL 1133542, at \*12.  Akins argues that the state court's conclusion that "the prosecution articulated race-neutral reasons for striking [Juror D]," *id.*, is contrary to the Supreme Court's decisions in *Batson* and *Hernandez v. New York*, 500 U.S. 352 (1991).

A race-neutral reason is "an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360 (plurality opinion).  "At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (alteration omitted) (internal quotation marks omitted).  The explanation need not be "persuasive, or even plausible." *Id.*  Showing that discriminatory intent is inherent in the proffered reason as a matter of law requires more than a showing that the prosecutor's proffered reason has a racially disproportionate impact, *Hernandez*, 500 U.S. at 359–60 (plurality opinion); *id.* at 373–74 (O'Connor, J., concurring in the judgment), or is related to the issue of race, *see United States v. Payne*, 962 F.2d 1228, 1233 (6th Cir.) ("affirm[ing] the district court's finding that the prosecutor offered a valid neutral explanation" when the prosecutor stated that two black jurors were excused "not because of their race but

because of the advocacy groups [NAACP and Black Caucus] to which they belonged"), *cert. denied*, 506 U.S. 909 (1992), *and* 506 U.S. 1033 (1992).

Akins argues that "[t]he only inference that could conceivably have supported a strike based upon [Juror D's] comments is that [she], as an African-American expressing such views, would be more sympathetic to an African-American defendant than a similarly situated white juror." Appellant Br. at 21.  He argues that such inference is contrary to *Batson*, in which the Court stated that "the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race."  476 U.S. at 97.

The Fifth Circuit and the Ninth Circuit have rejected similar arguments that striking a juror because of the juror's expressed views on race in the criminal justice system is the same as striking the juror because of the juror's race.  *See Tolbert v. Gomez*, 190 F.3d 985, 987, 989 (9th Cir. 1999) (rejecting argument because the defendant "failed to establish that [the juror's] opinions about the importance of race [in a juror's evaluation of guilt] was peculiar to his race, or that the opinions stood as a proxy for it" (citing *Purkett*, 514 U.S. at 769)); *United States v. Fike*, 82 F.3d 1315, 1319–20 (5th Cir. 1996) ("*Batson* does not forbid striking a juror who holds a particular opinion about the U.S. justice system.  Rather, it forbids striking jurors based on their race."), *cert. denied*, 519 U.S. 896 (1996), *and* 520 U.S. 1131 (1997), *overruled on other grounds by United States v. Brown*, 161 F.3d 256, 259 n.8 (5th Cir. 1998) (en banc), *abrogated on other grounds by United States v. Cantu*, 230 F.3d 148, 152 (5th Cir. 2000); *see also United States v. Perkins*, 105 F.3d 976, 978–79 (5th Cir. 1997).  In particular, the Ninth Circuit concluded that "[t]he assumption that race and an opinion on race are inseparable is antithetical to the very type of racial stereotyping that *Batson* forbids." *Tolbert*, 190 F.3d at 989.

We need not and do not decide at this time whether we would adopt the reasoning of the Fifth Circuit or the Ninth Circuit if we were considering this issue on direct review.  However, we find their reasoning persuasive for purposes of this habeas

petition. We conclude that the state court's conclusion that the prosecutor provided legally sufficient, race-neutral reasons for striking Juror D is not contrary to, or an unreasonable application of, the clearly established legal principles in *Batson* and *Hernandez*.

### b. *Batson* Step Three: Determining Discriminatory Intent

Akins also argues that the state court's application of a sole-motivation standard at step three of *Batson* is contrary to clearly established Supreme Court law. He argues that *Batson* and its progeny require a per se approach under which any improper discriminatory motivation violates *Batson*. Alternatively, Akins argues that a mixed-motive, or "but for," standard is the constitutional minimum. *See Kesser v. Cambra*, 465 F.3d 351, 372 (9th Cir. 2006) (en banc) (Wardlaw, J., concurring) ("[W]here both race-based and race-neutral reasons have motivated a challenged decision," the Supreme Court "allows those accused of unlawful discrimination to prevail, despite clear evidence of racially discriminatory motivation, if they can show that the challenged decision would have been made even absent the impermissible motivation, or, put another way, that the discriminatory motivation was not a 'but for' cause of the challenged decision.").[2]

Akins quotes language from Supreme Court decisions subsequent to *Batson* that support his arguments for the per se or mixed-motive standards.[3] *See Miller-El v. Dretke*, 545 U.S. 231, 238 (2005) ("When the government's choice of jurors is *tainted*

---

[2]The issue of dual-motivation analysis with respect to a *Batson* challenge is still relevant when all of the prosecutor's proffered reasons are race neutral because the trial court nonetheless may conclude that one of the facially race-neutral reasons is pretextual or that there is other evidence demonstrating that the prosecutor was motivated at least in part by race. *See, e.g.*, *United States v. Taylor*, 92 F.3d 1313, 1321 (2d Cir. 1996) ("After noting that defendants had offered facially-sufficient race-neutral reasons for each challenge, the Magistrate determined that the government had nonetheless met its burden of proving that defendants exercised their peremptory challenges, at least in part, guided by race-based considerations." (internal quotation marks omitted)).

[3]Akins also cites Justice Marshall's dissent, joined by Justice Brennan, from the Court's denial of certiorari in *Wilkerson v. Texas*, 493 U.S. 924 (1989), to support his claim. *Id.* at 928 ("I would find that this Court's requirement that a prosecutor provide a 'neutral' explanation for challenging an Afro-American juror means just what it says—that the explanation must not be tainted by *any* impermissible factors."). A dissent from the denial of certiorari does not constitute "clearly established Federal law" under § 2254(d)(1). *See Lockyer*, 538 U.S. at 72 ("Section 2254(d)(1)'s 'clearly established' phrase refers to the holdings, as opposed to dicta, of this Court's decisions . . . ." (internal quotation marks omitted)).

*with racial bias*, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial.'" (alterations omitted) (emphasis added) (internal quotation marks omitted)); *Powers v. Ohio*, 499 U.S. 400, 402 (1991) ("Despite the clarity of these commands to *eliminate the taint of racial discrimination* in the administration of justice, allegations of bias in the jury selection process persist." (emphasis added)). The Supreme Court, however, has not decided explicitly the standard to apply at the third step of *Batson* for determining whether the defendant has shown intentional discrimination. *See Snyder v. Louisiana*, 552 U.S. 472, 485 (2008); *cf. Berghuis v. Smith*, --- U.S. ---, 130 S. Ct. 1382, 1393 (2010) (noting, in reversing the grant of a writ of habeas corpus on a Sixth Amendment fair-cross-section claim because the state prisoner's entitlement to federal-court relief was not "clearly established," that no Supreme Court decision "specifies the method or test courts must use to measure the representation of distinctive groups in jury pools"); *Knowles v. Mirzayance*, --- U.S. ---, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the] Court"; "Instead, [habeas] relief may be granted only if the state-court decision unreasonably applied the more general standard . . . established by [the relevant Supreme Court decisions] . . . ." (internal quotation marks omitted)).

The Court's decision in *Snyder* suggests that proving discriminatory intent does not require showing that race was the sole motivation for the peremptory strike:

> In other circumstances, we have held that, once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a state actor, the burden shifts to the party defending the action to show that this factor was not determinative. We have not previously applied this rule in a *Batson* case, and we need not decide here whether that standard governs in this context. For present purposes, it is enough to recognize that a peremptory strike shown to have been motivated in substantial part by discriminatory intent could not be sustained based on any lesser showing by the prosecution.

552 U.S. at 485 (citation omitted) (on direct review from the Louisiana Supreme Court). *Snyder*, however, was decided well after the state court's decision here and after Akins's

conviction became final, and therefore does not qualify as "clearly established Federal law" under § 2254(d). *See Thaler v. Haynes*, --- U.S. ---, 130 S. Ct. 1171, 1174 n.2 (2010).[4]

Akins also cites decisions of other state courts that have adopted the per se approach,[5] as well as decisions of our sister circuits that have adopted a mixed-motive standard.[6] Three judges in the Ninth Circuit's en banc decision in *Kesser*, 465 F.3d 351, concluded that the "failure to apply mixed-motive analysis constituted an 'unreasonabl[e] refus[al]' to extend clearly established federal law, as determined by the Supreme Court, to a context where it should apply." *Id.* at 375 (Wardlaw, Paez, and Berzon, JJ., concurring) (alterations in original) (quoting *Williams*, 529 U.S. at 407). Since that decision, the Ninth Circuit has rejected the application of a mixed-motive analysis in favor of a modified version of the per se approach that considers "whether the prosecutor was 'motivated in substantial part by discriminatory intent.'" *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010) (quoting *Snyder*, 552 U.S. at 485). We also note that we have considered mixed motives under *Batson* only in the dicta of an unpublished, non-precedential opinion. *See United States v. Peraza*, 25 F.3d 1051, 1994

---

[4]The Supreme Court has granted certiorari to decide whether the temporal cutoff for whether a Supreme Court decision qualifies as "clearly established Federal law" under § 2254(d) is the date of the relevant state-court decision or the date on which the petitioner's state conviction became final. *See Greene v. Palakovich*, 606 F.3d 85 (3d Cir. 2010), *cert. granted*, 79 U.S.L.W. 3310 (U.S. Apr. 4, 2011) (No. 10-637). We have concluded that the date on which the petitioner's state conviction became final is the relevant date. *See Miller v. Stovall*, 608 F.3d 913, 919 (6th Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851). The Court's resolution of the issue in *Greene*, however, does not impact our analysis here.

[5]*See State v. Lucas*, 18 P.3d 160, 163 (Ariz. Ct. App. 2001); *Rector v. State*, 444 S.E.2d 862, 865 (Ga. Ct. App. 1994); *McCormick v. State*, 803 N.E.2d 1108, 1113 (Ind. 2004); *Payton v. Kearse*, 495 S.E.2d 205, 210 (S.C. 1998); *Riley v. Commonwealth*, 464 S.E.2d 508, 510 (Va. Ct. App. 1995). Additionally, the District of Columbia Court of Appeals has held that "even where the exclusion of a potential juror is motivated in substantial part by constitutionally permissible factors . . . the exclusion is a denial of equal protection and a *Batson* violation if it is partially motivated as well by the juror's race." *Robinson v. United States*, 890 A.2d 674, 681 & n.12 (D.C. 2006). It declined, however, to decide whether a party may "overcome a *Batson* challenge and save peremptory strikes tainted by racial . . . bias by proving that the same strikes would have been exercised for [race-neutral] reasons in the absence of the improper motive." *Id.* The Texas Court of Criminal Appeals has applied a mixed-motive standard. *Guzman v. State*, 85 S.W.3d 242, 253 (Tex. Crim. App. 2002).

[6]*See Wallace v. Morrison*, 87 F.3d 1271, 1274–75 (11th Cir.) (habeas review, pre-AEDPA), *cert. denied*, 519 U.S. 1044 (1996); *United States v. Darden*, 70 F.3d 1507, 1531 (8th Cir. 1995) (direct review), *cert. denied*, 517 U.S. 1149 (1996), *and* 518 U.S. 1026 (1996); *Jones v. Plaster*, 57 F.3d 417, 421 (4th Cir. 1995) (direct review); *Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir. 1993) (habeas review, pre-AEDPA).

WL 228244, at *3 (6th Cir. 1994) (unpublished table decision) (concluding that the defendant had waived the right to appeal an allegedly discriminatory peremptory challenge but nonetheless commenting that "any of [the prosecutor's proffered] neutral reasons, standing alone, would have caused [the prosecutor] to exclude [the juror]"). On the whole, we recognize that courts that have considered expressly the issue of mixed motives in *Batson* challenges overwhelmingly reject a sole-motivation standard in favor of some level of dual-motivation analysis.

Akins also is correct that equal-protection case law outside the context of *Batson* claims generally does not require the plaintiff to meet the high hurdle of showing that the improper motivation was the sole reason for the action taken. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). In our review of a petition for a writ of habeas corpus, however, we must not substitute our own judgment; rather, the inquiry is limited to whether the state court's decision is objectively unreasonable. *See Pudelski*, 576 F.3d at 607; *Braxton*, 561 F.3d at 458. Therefore, although we may conclude in our own independent judgment that the state court erred in applying a sole-motivation standard, our review is for unreasonableness. We believe that the reasonableness of a state court's application of a sole-motivation standard in determining discriminatory intent under step three is a closer question than when a state court applies the per se or mixed-motive approaches. *See Pecor v. Walls*, 56 F. App'x 723, 727 (7th Cir.) (unpublished order) (state court applied mixed-motive approach), *cert. denied*, 540 U.S. 822 (2003); *Gattis v. Snyder*, 278 F.3d 222, 232–35 (3d Cir.) (same), *cert. denied*, 537 U.S. 1049 (2002).

Most damaging to Akins's claim, however, the Supreme Court used the word "solely" in the *Batson* decision itself: "the Equal Protection Clause forbids the prosecutor to challenge potential jurors *solely* on account of their race." *Batson*, 476 U.S. at 89 (emphasis added). The Supreme Court has repeated the "solely" phrasing from *Batson* in subsequent decisions. *See United States v. Martinez-Salazar*, 528 U.S. 304, 315 (2000) ("Under the Equal Protection Clause, a defendant may not exercise a

peremptory challenge to remove a potential juror *solely* on the basis of the juror's gender, ethnic origin, or race." (emphasis added)); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994) ("When persons are excluded from participation in our democratic processes *solely* because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized." (emphasis added)); *Powers*, 499 U.S. at 409 ("We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury *solely* by reason of their race . . . ." (emphasis added)). Lower federal courts also continue, even after *Snyder*, to include the "solely" phrasing in their decisions. *See, e.g.*, *United States v. Taylor*, 636 F.3d 901, 904 (7th Cir. 2011); *United States v. Lewis*, 593 F.3d 765, 770 (8th Cir.), *cert. denied*, 130 S. Ct. 3375 (2010). The Supreme Court in *Batson* and its progeny, and the lower federal courts in applying *Batson*, may not have intended the inclusion of "solely" to preclude dual-motivation analysis in appropriate cases, *see Howard v. Senkowski*, 986 F.2d 24, 28–30 (2d Cir. 1993), but it nonetheless informs our analysis of the reasonableness of the state court's decision.

Thus, we cannot conclude that the state court's application of a sole-motivation standard, rather than a per se approach or mixed-motive standard, is an unreasonable application of the relevant clearly established Supreme Court law.

### 2. Unreasonable Determination of the Facts

The question at step three of *Batson*—whether the defendant has shown intentional discrimination on the basis of race—is a question of fact. *Braxton*, 561 F.3d at 458 (citing *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003)). Akins argues that the state court erred in concluding that he did not show discriminatory intent. The question of discriminatory intent "turns largely on an evaluation of credibility" and therefore "[t]he trial court's determination is entitled to great deference." *Felkner v. Jackson*, --- U.S. ---, 131 S. Ct. 1305, 1307 (2011) (internal quotation marks omitted). Furthermore, under AEDPA, Akins must show that the state court's conclusion was "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." § 2254(d)(2); *see Felkner*, 131 S. Ct. at 1307; *Dretke*, 545 U.S. at 240; *Lancaster*, 324 F.3d at 429 n.1. "Thus we presume the [Tennessee] court's factual findings to be sound unless [Akins] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Dretke*, 545 U.S. at 240 (quoting § 2254(e)(1)).

In Akins's case, the trial judge determined that the prosecutor's first reason, that Juror D's half-brother had been convicted of a crime, was a sufficient ground to strike her—i.e., that the reason was not pretextual and therefore Akins had not demonstrated discriminatory intent. *Groomes*, 2000 WL 1133542, at *12. On direct appeal, Akins attacked the reason on which the trial judge relied, arguing that discriminatory intent could be inferred from the fact that a white juror also indicated that she had a brother convicted of a crime but was not excused.[7] In response to Akins's argument, the state court reasoned that at trial Akins never raised the unequal treatment with respect to the white juror as an inference of discrimination. The state court further reasoned that the prosecutor was not required "to pick one factor . . . and exclude every single juror who has that factor, regardless of whether the attorney's gut feeling is that the particular juror would be favorable to his side." *Id.* at *11. The state court ultimately concluded that Akins did not show intentional discrimination.

We question the state court's reasoning. Although the state court is correct that the prosecutor is not *required* to apply equally a factor to all potential jurors, the fact that he or she does not do so for otherwise-similar jurors of different races nevertheless "is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Dretke*, 545 U.S. at 241. Furthermore, simply attributing the unequal application of a factor to a party's "gut feeling" would eviscerate *Batson*. "It is true that peremptories are often the subjects of instinct," "[b]ut when illegitimate grounds like

---

[7]The juror's affidavit presented to the state court, as well as the completed juror questionnaires, are not part of the record before us. It appears that the state trial judge ordered the juror questionnaires to be shredded at the end of jury selection. R.36, Add. 3 (DVD 3 at 5:41:10–5:43:00); R.36, Add. 3 (DVD 16 at 1:57:38–1:59:00). We have only a blank copy of the questionnaire in the record. Appendix ("App.") at A20 (Juror Questionnaire).

race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." *Id.* at 252.

Nevertheless, we cannot conclude that Akins has put forth evidence "too powerful to conclude anything but discrimination," or that the prosecutor's proffered race-neutral reasons were "so far at odds with the evidence that pretext is the fair conclusion." *Id.* at 265. Akins presents compelling evidence of discriminatory intent in the trial judge's comment regarding the prosecutor's pattern of dismissing black jurors and in the prosecutor's unequal application of a factor with respect to Juror D and a white juror. The prosecutor's reliance on Juror D's race-related statements, although not sufficient to prove discriminatory intent as a matter of law, also is some evidence of discriminatory intent.[8] If we were considering Akins's claim on direct review, we would come to a different conclusion. But we cannot conclude that the state court's determination that the prosecutor did not intend to discriminate on the basis of race was objectively unreasonable.

## C. Self-Representation Claim

Akins's second asserted ground for relief is that the trial court erred in permitting him to represent himself at trial. Akins was seventeen years old at the time of the underlying robbery, and initially was charged in a juvenile petition but ultimately was tried as an adult. He was appointed counsel, but throughout the course of the juvenile and trial court proceedings, he wrote letters to the juvenile and trial court judges asking to represent himself. On March 12, 1998, Akins, through his appointed counsel, filed a motion to represent himself at trial. Akins filed an affidavit with the motion, swearing that he had met with his appointed counsel numerous times to discuss the case, that he had received copies of the discovery and motions filed in the case, that he knew he had a right to counsel, that he had discussed his decision to represent himself with counsel, that counsel had advised against his decision, and that he made the "decision freely and

---

[8]The probative value of such evidence would be stronger if the prosecutor actively solicited the jurors' views on race, in comparison to when, as here, the juror first raises the issue of race. *See Thomas v. Roe*, 138 F. App'x 936, 938 (9th Cir. 2005) (unpublished decision).

voluntarily."   Appendix ("App.") at A15 (Aff.).   The affidavit also included the statement, "I am prepared to go to trial on April 7, 1998," but the statement was crossed out and initialed by Akins and his appointed counsel. *Id.*

At a motions hearing on April 6, 1998—one day before Akins's trial was scheduled to start—the trial judge engaged in a colloquy with Akins regarding the motion. The trial judge asked Akins his age and level of education, whether he had any past experience with the criminal justice system, if he understood the charge against him and the penalty for the offense, and if he knew anything about the rules of evidence and the rules of criminal procedure. In response to the trial judge's questions about the rules of evidence, Akins asked for elbow counsel to assist him. The trial judge advised Akins that he thought Akins was making a serious mistake, and asked if Akins still wished to represent himself. Akins confirmed that he did. When the trial judge asked why he wanted to represent himself, Akins responded, "I feel in my heart that it's the right thing to do." R.36, Add. 19 (DVD 2 at 2:16:15–2:16:20). Akins's appointed counsel questioned him as well. Akins confirmed in response to his counsel's questions that he knew he had a right to counsel, that he had discussed his case with counsel, that counsel had provided him with a copy of the state's discovery materials, that he was satisfied with counsel's representation thus far, that he wanted appointed counsel to remain as elbow counsel, that no one influenced his decision to represent himself, and that counsel had advised him that his decision was not a good idea. Akins then signed a waiver of counsel form, and the trial judge granted Akins's request to represent himself and permitted appointed counsel to serve as elbow counsel. The trial judge asked Akins if there was anything else, and Akins responded regarding some motions that his appointed counsel had wanted to file. The trial judge interrupted Akins, asking if he realized that the trial was set for the next day and stating that "we're still going to try the case." *Id.* at 2:21:00–2:21:55. Akins indicated that he understood, and the trial judge again asked Akins if he still wanted to represent himself. Akins responded that he did. Akins's trial in fact started the next day on April 7, 1998.

At his state post-conviction hearing, Akins described his requests to represent himself as occurring in two stages.  First, his mentally ill mother told him that he should write the court requesting to represent himself.  But then his mother was "out of the picture" and he felt he "would have been a fool" to represent himself so he allowed the court to appoint counsel.  R.36, Add. 16 (Post-Conviction Hr'g Tr. at 22).  In the second stage, after counsel was appointed, Akins became dissatisfied with counsel's representation, and it was for this reason that he again, and ultimately, decided that he wanted to represent himself.

It is well established that the Sixth Amendment provides a defendant the right to the assistance of counsel, as well as the related right to refuse such assistance in conducting his or her own defense.  *Faretta v. California*, 422 U.S. 806, 832–36 (1975).  "A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation."  *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir.) (alteration omitted) (internal quotation marks omitted), *cert. denied*, 516 U.S. 884 (1995); *see also United States v. McDowell*, 814 F.2d 245, 248–49 (6th Cir.), *cert. denied*, 484 U.S. 980 (1987).  A defendant's assertion of his right to self-representation is analyzed as a waiver of the right to counsel.  *See Faretta*, 422 U.S. at 835.  The waiver must "be knowing, voluntary, and intelligent," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)), and must be "done with sufficient awareness of the relevant circumstances," *id.* at 81 (internal quotation marks omitted).  In other words, the record should "establish that [the defendant] knows what he is doing and his choice is made with eyes open."  *Faretta*, 422 U.S. at 835 (internal quotation marks omitted).  "[I]t is the [petitioner's] burden to prove that he did not competently and intelligently waive his right to the assistance of counsel."  *Tovar*, 541 U.S. at 92; *accord Johnson*, 304 U.S. at 468–69.

The Supreme Court takes a "pragmatic approach to the waiver question," *Tovar*, 541 U.S. at 90 (internal quotation marks omitted), and "[t]he information a defendant

must possess in order to make an intelligent election . . . will depend on a range of case-specific factors," *id.* at 88 (citing *Johnson*, 304 U.S. at 464).  Therefore, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand."  *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948).  In the context of a defendant representing herself when entering a guilty plea, the Supreme Court has said that

> [t]o be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.  A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Id.* at 724; *see also Tovar*, 541 U.S. at 81 ("The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.").

The relevant state-court decision is the Tennessee Court of Criminal Appeals' decision on review of Akins's petition for post-conviction relief because it is the last state court to adjudicate Akins's self-representation claim on the merits.  *See Pudelski*, 576 F.3d at 607.  The state court discussed the right of self-representation, citing the Supreme Court's decisions in *Faretta*, *Johnson*, and *Von Moltke*.  The state court concluded that Akins's waiver of his right to counsel was knowing, intelligent, and voluntary, and that the trial judge's examination of Akins "was more than sufficient" to make that determination.  *Akins*, 2007 WL 189461, at *6.  The district court concluded that Akins's claim is without merit with respect to either prong of § 2254(d).

### 1.  Whether the Waiver Was the Exercise of a Meaningful Choice

Akins first argues that the waiver was not the exercise of a genuine and meaningful choice because the court forced him "to choose between foregoing his right of self-representation and proceeding to trial unprepared."  Appellant Br. at 36.  The state argues that Akins's claim—"that he was denied sufficient time to prepare for trial as a *pro se* litigant"—is waived and defaulted.  Appellee Br. at 35–38.

We agree with the state that this argument, as framed in Akins's appellate briefs, was not presented to the district court and therefore should not be considered by this court.  *See Chandler v. Jones*, 813 F.2d 773, 777–78 & n.4 (6th Cir. 1987); *see also Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) (unpublished order) (applying *Chandler* post-AEDPA), *cert. denied*, 540 U.S. 1115 (2004).  In his brief, Akins frames the argument to be that the state court deprived him of the ability to assert meaningfully his right to self-representation:  "[H]e did everything that he could to seek the opportunity to exercise his right of self-representation meaningfully.  The state courts denied him that right."  Appellant Br. at 39; *see also* Rule 28(j) Letter of Nov. 29, 2010 (submitting as additional authority *United States v. Farias*, 618 F.3d 1049, 1054 (9th Cir. 2010), in which the court concluded that, "by making it clear that [the defendant] would have no time to prepare if he chose to proceed pro se, the district court denied him his right to meaningfully represent himself").  The gravamen of this argument is not that Akins did not want to represent himself or that he should not have been permitted to represent himself, but rather that he did not have sufficient time to prepare to do so effectively.  In his habeas petition filed in the district court, however, Akins argued that he did not want to represent himself but felt that he had to because he was unhappy with his appointed counsel.  Akins argued in his petition "that if he could have had another attorney he would rather another attorney represent him than [appointed counsel] who he was not satisfied with *or himself*."  R.1 (Pet. at 19) (emphasis added).  Akins argued that if the trial judge had probed deeper during his inquiry, the judge would have realized that Akins wanted to represent himself because "he felt that his attorney was working with the state to convict him so he felt he had no other choice."  *Id.* at 27.  Akins's

argument in his habeas petition that the trial judge's decision to permit him to represent himself "was the same as intentionally opening a door to a lion's den and allowing, permitting a little lamb to walk straight into a den full of starving lions . . . knowing . . . that there is no way that the little lamb is capable of defending itself," *id.* at 30, is substantially different than the argument presented in his briefs to this court that he simply needed more time to prepare. Moreover, the certificate of appealability that we granted states the asserted ground for relief as whether "the trial court erred in *permitting* [Akins] to represent himself at trial." Order, Mar. 10, 2009, at 1 (emphasis added).

Akins responds that he did argue in his petition "that the trial judge should have offered him 'more time.'" Reply Br. at 17 (quoting R.1 (Pet. at 29)). But Akins did not argue in his petition for more time *to prepare*; he argued for more time to consider his decision whether to represent himself—i.e., if he had more time to think about it, he would not have chosen to represent himself. Because Akins failed in his habeas petition to the district court to raise the argument that he was unprepared to go to trial, we decline to address it.

To the extent that Akins argues, as he did in his habeas petition, that he felt he had no choice but to represent himself because he was unhappy with his appointed counsel, it is not a basis upon which a writ of habeas corpus can issue. A defendant generally can "seek[] to change the status of his representation" in two ways: seeking to invoke the right to self-representation, or seeking to substitute counsel. *Benitez v. United States*, 521 F.3d 625, 631 (6th Cir. 2008). Akins argues, in essence, that although he filed a motion seeking the former, the trial judge should have figured out that he wanted the latter. The state court, however, found Akins's request that he wanted to represent himself "clear and unequivocal." *Akins*, 2007 WL 189461, at *5. We cannot conclude that the state court's determination was objectively unreasonable. Moreover, even if we construed Akins's complaints as seeking new counsel, "[i]ndigent defendants do not have the right to counsel of their choice," *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989); *Morris v. Slappy*, 461 U.S. 1, 14 (1983)), *cert. denied*, 130 S. Ct. 786 (2009), and

Supreme Court case law has not "clearly established" that a trial court must inquire about the reasons for dissatisfaction when a defendant requests appointment of new counsel, *id.*

Additionally, Akins's case is distinguishable from our decision in *James v. Brigano*, 470 F.3d 636 (6th Cir. 2006), in which the trial judge "summarily forced [the defendant] to choose between self-representation and counsel that, by [counsel's] own admission, was unprepared." *Id.* at 642 (granting habeas relief because the trial judge, in granting on the first day of trial the defendant's request to represent himself, made no effort to determine whether the defendant's waiver of his right to counsel was knowing or voluntary). In *James*, appointed counsel was the defendant's third attorney, and he had not yet received discovery from the prosecutor. Counsel asked the trial judge for a continuance, which the judge denied. *Id.* at 638–39. In Akins's case, although Akins's letters reveal that he was worried about his counsel's preparation for trial, the record does not show that his counsel was unprepared for trial. Akins has not shown that the choice that he faced rendered unreasonable the state court's conclusion that he knowingly, intelligently, and voluntarily waived his right to counsel.

### 2.    The Trial Judge's Failure to Warn of Mitigating Circumstances and Penalties

Akins's second argument with respect to his self-representation claim is that the trial judge did not discuss with him the application of enhancing and mitigating factors that would occur at sentencing and the potential monetary fine. The state responds that Supreme Court law does not require more inquiry than that which occurred and that any error is harmless.

We conclude that the state court's decision that Akins's waiver of counsel was knowing and voluntary and that the trial judge's inquiry was sufficient to make that determination was not an unreasonable application of clearly established Federal law. We reiterate that the ultimate constitutional question is whether Akins's waiver was knowing and voluntary. What the trial judge told Akins is relevant to the question of Akins's waiver because "the court serves a protective function" and "must ensure that

a waiver of counsel is appropriate" and ensure that the record establishes that it is appropriate. *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001); *see also Tovar*, 541 U.S. at 90 (discussing "the type of warnings and procedures that should be required before a waiver of [the right to counsel] will be recognized" (internal quotation marks omitted)); *United States v. Erskine*, 355 F.3d 1161, 1169–70 (9th Cir. 2004) ("[T]he appropriate inquiry is what the defendant understood—not what the court said or understood." (internal quotation marks omitted)). In seeking habeas relief, Akins has the "burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Tovar*, 541 U.S. at 92.

With respect to the argument that the trial judge did not inform Akins of potential defenses or sentencing factors, it is not clearly established that the trial judge is required to do so. *Von Moltke* states that the defendant must have "an apprehension" of the possible defenses and mitigating factors when waiving counsel but does not require that the judge must be the one to discuss this information with the defendant. *See* 332 U.S. at 724. In that case, the defendant pleaded guilty without the opportunity to have counsel "make an independent examination of the facts, circumstances, pleadings and laws involved" to be able to "offer his informed opinion" of how she should proceed. *Id.* at 721. Here, Akins had appointed counsel during pretrial proceedings. Akins swore in his affidavit and testified in court at the motions hearing that he had discussed his case with appointed counsel on numerous occasions. App. at A15 (Aff.); R.36, Add. 19 (DVD 2 at 2:17:30–2:18:00). Even if Akins was unsatisfied with counsel's work and the relationship was strained, we do not believe that the state court's conclusion that the trial judge's warnings were sufficient is an unreasonable application of *Von Moltke*. Finally, the "model inquiry" that we adopted in *McDowell*, 814 F.2d at 250, from the *Bench Book for United States District Judges*, to ensure that waivers of counsel are knowing, voluntary, and intelligent[9] does not suggest that the trial judge must discuss the potential defenses or sentencing factors with the defendant. *See Akins*, 2007 WL 189461, at *6

---

[9]The function of *McDowell*'s model inquiry is similar to the function of Rule 11 of the Federal Rules of Criminal Procedure in the context of guilty pleas: both are not constitutionally required but are "designed to assist the [trial] judge in making the constitutionally required determination" of voluntariness. *See McCarthy v. United States*, 394 U.S. 459, 465 (1969).

(noting that "the trial court's inquiry carefully tracks the sixteen questions listed in the bench book for federal judges, as well as additional relevant questions which were posed by the trial judge").

Akins's argument that the trial judge did not inform him of the monetary fine is more troubling but not a basis for habeas relief. Before waiving the right to counsel, the defendant must understand "the range of allowable punishments." *Von Moltke*, 332 U.S. at 724. "The constitutional requirement is satisfied when the trial court informs the accused of . . . the range of allowable punishments." *Tovar*, 541 U.S. at 81. The Supreme Court has not defined the phrase "range of allowable punishments," but *McDowell* instructs the trial judge to inform the defendant of the potential term of imprisonment *and* monetary fine before accepting the defendant's waiver of his right to counsel. *See McDowell*, 814 F.2d at 250–51 (instructing the judge to ask, "You realize, do you not, that if you are found guilty of the crime charged in Count I the court . . . could sentence to you to as much as ___ years in prison and fine you as much as $___?"); *see also* Fed. R. Crim. P. 11(b)(1)(H) (stating that, to accept a plea of guilty, "the court must inform the defendant of, and determine that the defendant understands, . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release"). Thus, we believe that the state court erred in stating that the trial judge "reviewed . . . the extent of possible punishment which [Akins] was facing." *Akins*, 2007 WL 189461, at *6.

Nevertheless, the record does not establish that Akins in fact did not know about the fine before waiving his right to counsel. *See Tovar*, 541 U.S. at 92 ("[W]e note that [the defendant] has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty."); *Erskine*, 355 F.3d at 1170 ("[H]ad [the defendant] admitted . . . that he had known the maximum penalty all along, this evidence would be relevant to our determination because it would shed light on the state of his understanding at the time of the prior *Faretta* hearing."). Moreover, Akins suggests that the fine "*might* have tipped the scales in [his] decisionmaking," or "*may* [have been] a major factor in the decision to waive the right to counsel." Reply Br. at

21 (emphases added).  But this speculation is not sufficient for Akins to meet his burden, on habeas review, to prove that his waiver of counsel was not knowing and voluntary. *See Tovar*, 541 U.S. at 92–93.

After consideration of the facts and circumstances particular to Akins's case, we cannot conclude the state-court decision—determining that Akins's waiver of his right to counsel was knowing, intelligent, and voluntary—was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See* § 2254(d)(1).

## III.  CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's denial of Akins's petition for a writ of habeas corpus.