**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0374n.06

Case No. 15-2233

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Jun 27, 2017

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JAMES MOSS, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KATHLEEN OLSON, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE, Chief Judge, STRANCH, and DONALD, Circuit Judges

**OVERVIEW**

BERNICE BOUIE DONALD, Circuit Judge. This case involves an appeal from the district court's grant of habeas relief to Petitioner James Moss. Moss challenged his convictions on three counts of second-degree criminal sexual conduct, three counts of third-degree criminal sexual conduct, one count of fourth-degree criminal sexual conduct, and two counts of accosting a child for immoral purposes. The district court concluded that petitioner was denied effective assistance of trial counsel when his attorney failed to call the complainants' grandmother to testify that one of the complainants recanted her allegations and for failing to adequately cross-examine this same complainant. For the reasons that follow, We REVERSE the district court order granting habeas relief.

## I. BACKGROUND

In 2011, Petitioner James Moss was convicted of sexually assaulting his then-girlfriend's teenage daughter, M, as well as her teenage niece, K.[1] Between 2002 and 2004, both girls lived with Moss and his girlfriend, Tammy Tansey. Tansey and Moss' daughter, A, and Moss' daughter from a previous relationship, T, also resided in the home during the relevant periods. The cases regarding M and K were consolidated for trial.

Regarding the trial, the Michigan Court of Appeals adduced the following facts, which are entitled to the presumption of correctness under § 2254(e)(1). K testified that when she was between the ages of thirteen and sixteen, Moss repeatedly engaged her in a sexual manner. She testified that he would bribe her to show him her breasts in exchange for cigarettes. M also accused Moss of sexually touching her, and further claimed that he digitally penetrated her on one occasion and forced her into sexual intercourse on another. M testified that she drank heavily during this period, which often resulted in blackouts. She recounted that on several occasions she awoke from an alcohol-induced slumber to discover Moss performing sexual acts on her, including penile-vaginal intercourse. T testified that she never witnessed inappropriate conduct by her father towards M or K. Tansey also testified that she had not witnessed any inappropriate conduct. Tansey further testified that K denied any inappropriate behavior to Tansey when Tansey directly asked her. Tansey also stated that M once taunted Tansey by claiming that M and the defendant were in a consensual sexual relationship, but later told Tansey that she was lying. Neither girl reported the incidents until 2009.

The matter was tried before a jury in September 2011. After less than three hours of deliberation, the jury convicted Moss on all of the counts brought against him. Specifically, the

---

[1] This case involves individuals who were minors at the time of the events in question. Thus, this memorandum, like the district court and state court below, does not refer to minors by their names, but rather by their initials.

jury convicted Moss of three counts of second-degree criminal sexual conduct and two counts of accosting a child for improper purposes in the case related to K and three counts of third-degree criminal sexual conduct and one count of fourth-degree criminal sexual conduct in the case related to M.

Moss appealed each case to the Michigan Court of Appeals, raising a number of issues including those presented in his habeas petition. The Michigan Court of Appeals granted Moss' motion for an evidentiary hearing pursuant to Mich. Ct. R. 7.211(C)(1) and *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), on the issue of whether Moss received constitutionally deficient representation when trial counsel failed to call the victims' grandmother, Novella Alliston, as a defense witness. During the *Ginther* hearing, the trial court heard statements from Moss' trial counsel as well as Alliston. Trial counsel stated that he reviewed the evidence provided by Moss' original counsel, including a police report in which Alliston stated, among other things, that M recanted her accusation against Moss to Alliston. However, counsel did not independently recall Alliston and did not interview or call her in preparation for trial. He stated that he did call Tansey and T in an attempt to impeach the victims and support the defense theory that the sexual assault did not occur. Alliston confirmed the statements attributed to her in the police report, which include M's recantation as well as statements by Alliston that M would "fuck a dog if she was drunk." R. 9-10, ID #509.[2] Alliston also testified to a second recantation, one not in the police report, in which she recalled M stating that "we lied" about the accusations against Moss. *Id*. at 507. The trial court determined that due to trial counsel's lack of recollection regarding Alliston, it could not reach a decision regarding counsel's allegedly deficient performance, but that Moss' claim of ineffective counsel nevertheless failed because he

---

[2] The record also shows that Alliston referred to M as "desperate" and a pathological liar who would be "dropped [off] at all hours of the morning by different men like a piece of meat." R. 9-12, ID #591-92.

could not make the requisite showing of prejudice. The Michigan Court of Appeals then affirmed Moss' convictions, and the Michigan Supreme Court denied Moss' application for leave to appeal.

Moss then filed a petition for federal habeas relief in the district court below, arguing that he was denied effective assistance of counsel when his counsel failed to fully investigate Alliston's testimony that M recanted her allegations and when his counsel failed to adequately cross-examine M at trial. The district court determined that counsel had rendered ineffective assistance in not fully investigating Alliston's testimony and that Moss was prejudiced by this failure, noting that the evidence against Moss was weak, that the victims lacked credibility, and that Alliston would have been more credible than Tansey. The district court also concluded that trial counsel was "clearly deficient" in failing to confront M on inconsistencies between her trial testimony and the police report, and that Moss was prejudiced by counsel's failure to effectively impeach M. The state appeals.

## II. JURISDICTION

The district court properly exercised 28 U.S.C. §§ 1331 and 2241 jurisdiction over Moss' petition for writ of habeas corpus filed under 28 U.S.C. § 2254. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## III. ANALYSIS

a) Standard of Review

This Court reviews "the district court's legal conclusions in habeas proceedings de novo and its findings of fact for clear error." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and citation omitted). Where a state court has adjudicated a claim on the merits, a federal court sitting in review of that decision is limited by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). In accordance with AEDPA, "with respect to any claim that was adjudicated on the merits in State court proceedings," this Court must uphold the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[H]abeas relief is available under the 'unreasonable application' clause if the state court 'unreasonably applies [a correct governing legal] principle to the facts of the prisoner's case.'" *Akins*, 648 F.3d at 385 (citation omitted). For a state court's decision to be an unreasonable application of clearly established federal law, the state court application must be objectively unreasonable and not just erroneous or incorrect. *Id*. at 385-86; *see also Renico v. Lett*, 559 U.S. 766, 773 (2010). The factual determinations of the state court are "presumed to be correct," unless the petitioner can rebut that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

AEDPA review is only available to claims "adjudicated on the merits in State court proceedings." *Id*. § 2254(d). However, a state court need not provide the reasons for its decision to deny relief in order for its decision to be deemed to have been adjudicated on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011). In habeas claims involving ineffective assistance of counsel, this Court has interpreted *Richter* to imply that "when there is no explanation as to *either Strickland* prong, a habeas court must afford *both* prongs AEDPA deference after 'determining what arguments or theories could have supported the state court's decision.'" *Rayner v. Mills*, 685 F.3d 631, 637 (6th Cir. 2012) (quoting *Richter*, 562 U.S at 102) (alterations omitted). However, "[w]hen a state court relied only on one *Strickland* prong to adjudicate an

ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court." *Id*. at 638. Rather, this Court applies de novo review. *Id*; *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice . . . so we examine this element of the *Strickland* claim *de novo*.").[3]

b) Ineffective Assistance of Counsel Claim Regarding Novella Alliston

A criminal defendant's right to the effective assistance of counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In stating a claim for ineffective assistance of counsel, a criminal defendant must show "that counsel's representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. A court's review of counsel's performance under this standard "is highly deferential and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Johnson v. Bell*, 525 F.3d 466, 487 (6th Cir. 2008) (internal quotation marks omitted). Petitioner bears the burden of showing that "counsel's performance was deficient." *Strickland*, 466 U.S. at 687. Regarding the prejudice requirement, a defendant must show that "there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have

---

[3] Appellant argues that the Supreme Court "implicitly overruled" *Rompilla* in *Davis v. Ayala*, which Appellant claims is analogous to the present case. In *Davis*, the Court reviewed a finding of harmlessness by the state court and afforded AEDPA deference to the state court decision. 135 S. Ct. 2187, 2198-99 (2015). There the petitioner sought habeas relief due to the trial court's decision to hear prosecution's justification for striking certain witnesses outside of the presence of the defense. *Id*. at 2197. The state court denied habeas relief on the grounds that any error committed by the trial court was harmless. *Id*. Reviewing this denial of habeas, the Court applied AEDPA review to the state court's finding of harmlessness, which it determined to be adjudicated on the merits. *Id*. at 2198. Appellant's argument is unfounded as *Davis* is neither analogous to the present case, nor does it implicitly overrule *Rompilla*. The *Davis* Court reviews the harmlessness decision without reaching the underlying constitutional claim that was left unadjudicated by the state court. Because the issue presented in *Rompilla* and the present case require the review of an unadjudicated claim, Appellant's argument regarding *Davis* fails.

been different." *Strickland*, 466 U.S. at 694 (emphasis added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004) (internal quotation marks omitted). To be actionable, this probability "must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Because the state court in the present case based its ruling on the prejudice prong without reaching the deficient performance prong, this Court reviews the deficient performance prong de novo, but still affords the prejudice prong AEDPA deference. *Daniel v. Curtin*, 499 F. App'x 400, 404 (6th Cir. 2012).

i. Deficient Performance

The Supreme Court has held that counsel's failure to adequately investigate before deciding on a defense strategy constitutes ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). "[S]trategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigations." *Id*. at 533 (internal quotation marks and citation omitted). In determining the reasonableness of a decision not to investigate, this Court must consider all of the circumstances. *Id*. Further, this Circuit has a long history of finding deficient performance on de novo review where an attorney fails to conduct any investigation of a witness. *See, e.g., Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) ("While the point of the Sixth Amendment is not to allow Monday-morning quarterbacking of defense counsel's strategic decisions, a lawyer cannot make a protected strategic decision without investigating the potential bases for it."); *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) ("Although defense counsel's decision not to call Ceruti was not an unreasonable trial strategy, we hold that counsel's failure to adequately investigate that decision before trial was deficient performance sufficient to satisfy the first prong of the *Strickland* test."); *Bigelow v. Haviland,* 576 F.3d 284, 289 (6th Cir. 2009)

(concluding that counsel's failure to seek corroboration for an alibi defense constituted deficient performance under *Strickland*); *Poindexter v. Booker,* 301 F. App'x 522, 528–29 (6th Cir. 2008) (concluding that counsel's failure to investigate two alibi witnesses constituted deficient performance under *Strickland*).

Further, the district court found that counsel's decision not to investigate Alliston constituted deficient performance because "in failing to locate and speak with Ms. Alliston . . . [,] counsel was not in a position to determine whether she would be beneficial or not to petitioner's case." R. 10, ID #1155. Indeed, even where it may be "objectively reasonable" to decline to call a witness, "it [i]s objectively unreasonable for counsel to make that decision without first investigating [the witness], or at least making a reasoned professional judgment that such investigation was unnecessary." *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005). It is undisputed that Moss' trial counsel had no independent recollection of Alliston and that he did not reach out to her before trial. It is also undisputed that Alliston's statements describing M's recantation as well as her drinking habits and her sexual behavior were included in the police report that counsel claimed to have read. While Appellant argues that there are objectively reasonable justifications for not further investigating Alliston in the police report, namely her apparent hostility towards M, as manifested in her callous statements about M, reasons that "might explain why an attorney ultimately would decide not to present the testimony of a witness at trial . . . do not explain why counsel would choose not to conduct even minimal investigation into the potential utility of a witness." *Curtin*, 499 F. App'x at 407. Trial counsel's failure to make any effort to investigate Alliston in light of her statements in the record may constitute deficient performance. However, the fact that Moss's counsel may have rendered deficient performance in failing to investigate Alliston does not on its own support a finding of ineffective

assistance of counsel because Moss must also prove that he was prejudiced by his counsel's performance.

### ii. Prejudice

A determination of deficient performance does not end the *Strickland* inquiry. In order for a petitioner to receive habeas relief, he must also show that his defense was prejudiced by counsel's deficient performance, such that but for the deficiency there is a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For the reasons noted above, this Court applies the AEDPA standard of review to the prejudice prong of Petitioner's claim. "The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable [which] is different from asking whether defense counsel's performance" prejudiced Petitioner under *Strickland*. *Id*. at 101. A purposefully strict standard, AEDPA limits habeas relief to only "extreme malfunctions in the state criminal justice systems," and cannot be used as "a substitute for ordinary error correction through appeal." *Id*. at 102-03. In reviewing the state court decision under this standard, we "presum[e] that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Further, we are to uphold the "state court's determination that a claim lacks merit . . . so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks and citations omitted).

The district court determined that Petitioner was prejudiced by counsel's failure to call Alliston on his behalf. In doing so, the district court noted that a criminal defendant may be

prejudiced by trial counsel's failure to call additional witnesses to corroborate his defense, and placed great emphasis on the weak evidence against Petitioner in this case. Notably, where "a verdict or conclusion [is] only weakly supported by the record, [it] is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. The district court largely based its finding of prejudice on the conclusion that there was a reasonable probability that the jury would have credited Alliston's testimony over the testimony of M and Tansey. However, nowhere in its prejudice analysis does the district court address the ultimate question of whether the state court's application of *Strickland* was reasonable. Rather, the district court "appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review," essentially concluding that because the district court "had little doubt that [Moss'] *Strickland* claims had merit . . . the state court must have been unreasonable in rejecting it." *Richter*, 562 U.S. at 102. However, this line of reasoning "overlooks arguments that would otherwise justify the state court's result." *Id.*

It was not unreasonable for the state court to conclude that there was a reasonable probability that Alliston's testimony would not have affected the result of the proceeding. The district court opinion relies on cases in which this Court found that the petitioner was prejudiced by counsel's failure to call additional alibi witnesses to corroborate his defense to reach the conclusion that this Court has rejected whole cloth the idea that additional alibi witnesses may be merely cumulative and, therefore, would not affect the outcome of a case. However, these cases do not support such a broad conclusion and are distinguishable from the present case. "Evidence is cumulative when it supports a fact established by existing evidence." *Stewart v. Wolfenberger*, 468 F.3d 338, 359 (6th Cir. 2006) (quotations omitted). In *Stewart*, trial counsel failed to submit a proper alibi notice for two witnesses who would have testified that petitioner

could not have committed a murder. *Id.* In that case, the alibi provided by the defense necessarily implicated a number of individuals, and the only witness called to testify was impeached. *Id.* Further, after the trial judge ruled that the two witnesses would not be allowed to testify due to improper notice, the prosecution emphasized the lack of additional alibi witnesses to undermine petitioner's alibi defense. Rather than ruling that additional alibi witnesses may not be considered cumulative, the *Stewart* Court ruled that where additional non-testifying witnesses were implicated in petitioner's alibi defense, their testimony may not be considered cumulative, as their absence "'must have significantly affected the jury's assessment of' Petitioner's guilt." *Id.* at 359-60 (citing *Strickland*, 375 F.3d at 445); *see also Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (finding prejudice where, due to trial counsel's failure to submit a timely notice of alibi, the trial judge excluded the testimony of the only three witnesses who could have corroborated petitioner's alibi testimony).[4]

First, the district court's reasoning for disregarding the state court's finding of a lack of prejudice – that this Circuit has rejected the idea that additional alibi witnesses are merely cumulative and thus their absence is non-prejudicial – is unsupported under the §2254(d) standard. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" and thus it "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting §2254(d)(1)). Neither the district court nor petitioner have provided Supreme Court precedent suggesting that additional alibi testimony as a rule may not be considered cumulative and thus non-prejudicial. Thus, the district

---

[4] The district court also cites *Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004), where counsel failed to investigate and thus overlooked three additional alibi witnesses who could not have been impeached in the way the testifying witness was. However, in that case this Court did not perform a prejudice analysis but rather remanded to the district court for an evidentiary hearing on the issue. *Id.* at 576.

court's implicit ruling that the state court unreasonably applied the *Strickland* standard because it inappropriately ruled that Alliston's testimony cumulative is unfounded.

Further, the case at bar is easily distinguishable from those relied upon by the district court. First, Alliston is not an alibi witness. "An alibi witness's testimony is based on direct first-hand knowledge that a defendant could not have committed the charged offense, and, if believed, is inherently dispositive of the case." *United States v. Munoz*, 605 F.3d 359, 379 n.15 (6th Cir. 2010). Alliston cannot testify based on direct first-hand knowledge that Moss did commit the crimes against M. Rather, she can testify regarding statements made by M recanting her accusations. In addition, unlike *Stewart* and *Clinkscale*, this is not a case where the jury would need to hear additional witness testimony to believe the petitioner's defense theory. Unlike in those cases where the petitioner's alibi defense necessarily involved participation by a number of individuals who were not called before the jury, in the present case, Moss' recantation defense did not necessarily involve participation by Alliston or any witness other than Tansey. Thus, Alliston's absence did not undermine the defense in the way that the absence of the overlooked witnesses in *Stewart* and *Clinkscale* did. Nor was Alliston's testimony the only other evidence that supported Petitioner's theory. There was existing evidence that M recanted: Moss was able to rely on testimony from Tansey, M's mother, and from M herself to bolster his claims.

In addition, *Stewart* and *Clinkscale* notwithstanding, this Court has not held that as a rule additional alibi testimony may not be considered cumulative. *Robins v. Fortner*, 698 F.3d 317, 330 (6th Cir. 2012) (holding that where an additional witness' testimony would be cumulative to testimony already provided, "[t]he state appellate court's conclusion that [petitioner] had failed to show prejudice was not unreasonable"). As in *Robins*, the state court here compared the

testimony that was presented to the jury to the testimony that may have been presented if Alliston had testified and determined that Alliston's testimony was cumulative and thus her absence was not prejudicial. Given that M's mother, Tansey, testified regarding a recantation that M made to her, and considering the apparent animosity Alliston expressed towards her granddaughter in her statement to the police, it was not unreasonable for the state court to conclude that her exclusion was not prejudicial.

Petitioner attempts to draw a parallel between this case and the Ninth Circuit's decision in *Vega v. Ryan*, 757 F.3d 960 (9th Cir. 2014). Both cases involve claims of ineffective assistance of counsel in sexual assault cases where trial counsel failed to interview an additional recantation witness. However, in *Vega*, the additional witness was a Catholic priest to whom the victim recanted during confession. *Id.* at 962. The Ninth Circuit concluded that trial counsel's failure to interview and produce this witness at trial was prejudicial even though the victim's mother also testified that the victim recanted to her. *Id.* However, recanting to one's priest during confession, a purposefully anonymous practice, is not analogous to recanting to one's grandmother, especially where that grandmother views the victim as a sexually promiscuous liar with a substance abuse problem. In *Vega*, the relationship between the non-testifying priest and the victim was inherently different from the relationship between the testifying mother and the victim, such that reasons for discounting the testimony of the mother would not have applied to the potential testimony of the priest. The same cannot be said in the present case. It was not unreasonable for the state court to conclude that a jury that accepted M's explanation that she recanted to her mother because she was seeking her mother's love would also accept that same explanation regarding any recantation to Alliston, M's grandmother.

Petitioner also argues in passing that the state court mischaracterized the prejudice inquiry. The Michigan Court of Appeals initially correctly articulated the standard for prejudice under *Strickland* as requiring Moss to demonstrate "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." R. 9-12, ID #533. Later in its analysis, however, the Michigan court incorrectly stated that "failure to call or investigate a witness amounts to ineffective assistance only if it deprives the defendant of a substantial defense." *Id*. at ID #534. According to the state court, a substantial defense is one that "*might* have made a difference in the outcome of the trial." *Id*. (emphasis added). However, the state court based its determination on the appropriate standard. It concluded that because trial counsel presented evidence of M's recantation along with evidence that otherwise painted the victims in a negative light, it could not "discern a reasonable probability that Alliston's testimony would have swayed the jury." *Id*. Further, the burden for showing a substantial defense is much lower than the "reasonably probability" standard imposed by *Strickland*. The state court decision could be interpreted as concluding that because Moss cannot make the showing that Alliston's testimony *might* have made a difference in the outcome, Moss necessarily cannot make the showing that it is *reasonably probable* that the result would be different. As the Supreme Court explained in *Visciotti*, AEDPA deference requires that "state-court decisions be given the benefit of the doubt." *Visciotti*, 537 U.S. at 24. "[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Id.* The Michigan Court of Appeals both initially articulated and based its conclusion on the proper standard. Accordingly, we grant the state court the benefit of the doubt and assume that it considered Moss' claim under the proper standard.

For the foregoing reasons, we reverse the district court's grant of habeas relief for counsel's failure to investigate on the grounds that the Petitioner was not prejudiced by his counsel's deficient performance.

### c) Trial Counsel's Cross-Examination of M

The district court concluded that trial counsel was "clearly deficient" for failing to impeach M on inconsistencies between her statement to the police and her testimony at trial. The district court then determined that Petitioner was prejudiced by this failure. Specifically, the district court compared M's trial testimony that she "voluntarily reported petitioner's abuse to the police" and that the abuse began in 2003 when M was 17 years old to police reports which suggest that M's boyfriend reported the alleged abuse and that the abuse started in 2002 when M was 16. R. 10, ID #1158. The state court, on the other hand, considered the manner in which the abuse was reported to the police to be a "trivial detail" and did not believe it could have affected the trial. R. 9-12, ID #535. It also noted that while trial counsel did not produce the police report itself to impeach M's testimony, "he did attack M's credibility specifically noting inconsistencies in her timeline of events," before ultimately concluding that producing the report for impeachment purposes was not likely to have changed the outcome of the trial. *Id*. The district court concluded that trial counsel nevertheless failed to impeach M on her inconsistencies and that "[a]ll counsel had to do was ask two more questions on cross-examination to completely undermine the credibility of M." R. 10, ID #1158. Again, the district court reached its conclusion without applying the appropriate standard of review. Because the state court arguably only adjudicated the prejudice prong on the merits, this Court reviews the deficient

performance prong de novo, but still affords the prejudice prong AEDPA deference. *Curtin*, 499 F. App'x at 404.[5]

Even viewing the claim de novo, Moss has not sufficiently proven that his counsel performed deficiently during his cross-examination of M. As the court below has previously acknowledged, "[w]here, as here, trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim." *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). Trial counsel made a substantial effort to impeach M during her cross-examination, asking her about the likelihood that no one would have heard her screams for help, her recantation to her mother, her history with drinking, and the inconsistency in her timeline. R. 9-12, Id # 535. The idea that trial counsel may have been "more effective[]" in his impeachment had he taken another course is precisely the sort of second-guessing of a tactical judgment that *Strickland* counsels against. *See Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014). Though counsel could have further probed the inconsistencies highlighted by the district court, his failure to do so in light of the otherwise extensive cross-examination does not undermine the presumption that his "conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if Moss had sufficiently proven deficient performance, he cannot sufficiently prove prejudice. The state court certainly adjudicated the prejudice prong, concluding that defense counsel's failure to follow up on certain inconsistencies between M's testimony and her

---

[5] Appellant asks us to conclude that the state court implicitly ruled on the deficiency prong by noting that the decisions relating to the questioning of witnesses are generally considered matters of trial strategy and then detailing the extent of trial counsel's cross-examination of M. We decline to find an implicit ruling because petitioner's deficient performance claim nonetheless fails under de novo review.

statement to the police was unlikely to have affected the outcome of the trial. Thus, the state court's analysis is afforded AEDPA deference. The district court afforded the state court's ruling no deference, reaching its conclusion that Moss was prejudiced by counsel's failure to impeach without even referencing the state court or the reasonableness of its ruling. However, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. While the district court may believe that the state court's ruling was incorrect, neither it nor the Petitioner has shown that the state court's ruling was unreasonable in light of Supreme Court precedent. Given the depth of the cross-examination and counsel's repeated reference to inconsistencies in M's story, the state court's ruling that additional questions regarding M's inconsistences were unlikely to have impacted the outcome was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond the possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Because Petitioner has not made a sufficient showing under *Strickland* to warrant habeas relief for ineffective assistance relating to his counsel's cross-examination of M, we reverse the ruling of the district court on this issue.

> d) <u>District Court's Grant of Relief On All of Petitioner's Convictions</u>

Finally, Appellant contests the district court's decision to grant habeas relief for all of Moss' convictions. Appellant contends that if relief is warranted, it should be limited to M's convictions relating to M on the grounds that any prejudice related to M did not undermine the convictions related to K. Petitioner argues that the cases were linked together by the prosecution. Because we have reversed the district court's grant of habeas relief regarding both counsel's failure to investigate Alliston and counsel's failure to impeach M on inconsistencies between her trial testimony and the police report, we decline to address the question of whether

the district court inappropriately granted habeas relief for the claims related to Moss' conduct with K as well as M.

## V. CONCLUSION

Because the district court failed to apply the appropriate standard, we reverse the grant of habeas relief. The state court was not unreasonable in determining that the absence of Novella Alliston's testimony did not prejudice Moss' defense. Nor was the state court unreasonable in determining that trial counsel's failure to further question M regarding inconsistencies in her statements did not affect the outcome of the trial. For these reasons, habeas relief is not warranted. We **REVERSE**.